**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

ORLANDO REYES-GARCIA and his
wife DELIA MORALES CAMACHO

    Plaintiffs

    v.                                    CIVIL NO. 98-1057 (JAG)

MUNICIPALITY OF GUAYNABO, et al

    Defendants

---

## OPINION AND ORDER

Plaintiffs Orlando Reyes-García ("Reyes-García") and Delia Morales Camacho ("Morales"), the conjugal partnership formed by them, brought suit against defendants Hector O'Neill ("Mayor O'Neill"), Carmen Febo-Arvelo ("Febo"), Vidal Reyes-Rosado ("Reyes-Rosado"), and the Municipality of Guaynabo pursuant to 42 U.S.C. § 1983. Defendants submitted a motion to dismiss (Docket #8), arguing plaintiffs' § 1983 claim was time-barred by the applicable statute of limitations. Defendants further contended that plaintiffs had failed to state a cognizable claim for conspiracy under 42 U.S.C. § 1985(3). The Court granted the motion as to the § 1985 claim, but denied the motion as to the § 1983 claim. Defendants have moved for summary judgment (Docket 46), contending that plaintiffs have not proffered sufficient evidence to substantiate that defendants' alleged discriminatory actions occurred within the applicable limitations period and that

such actions constituted a § 1983 violation. Upon review of the record, the Court **GRANTS** the motion.

## FACTUAL BACKGROUND

Reyes-García has worked for the Municipality of Guaynabo since 1989, and in October, 1994, he attained the position of Director of Public Revenues. (Docket 82, Amended Statement of Uncontested Facts, p. 1,4). Soon thereafter, in 1995, the New Progressive Party ("NPP") primary race for the Puerto Rico House of Representatives began in Guaynabo, and Reyes-García acted as a campaign manager for NPP candidate, Rocky Cruz. Mayor O'Neill, for whom Reyes-García worked, supported Rocky Cruz's opponent for the NPP nomination. (Id. at 6). Reyes-García maintains that his support of an NPP candidate different from the candidate the Mayor supported led to his alleged discriminatory treatment. (Docket 66, Motion in Opposition to Summary Judgment, p. 2). Reyes-García asserts that the alleged discriminatory treatment began immediately following the primary race. In February, 1996, Guaynabo's Public Revenue Office was restructured and named the Center for Collection of Public Revenues. (Docket 82, Amended Statement of Uncontested Facts at 7). In February 12, 1996, Mayor O'Neill announced defendant Reyes-Rosado would be director of this new center. (Id.). On this same day, upon learning of the news of Reyes-Rosado's appointment, Reyes-García went to a doctor complaining of high blood pressure, and also reported to the State

2

Insurance Fund for treatment. (Id. at 8). Reyes-García claimed to have been shocked by Mayor O'Neill's announcement. (Id.). Consequently, Reyes-García took a leave of absence from February 12 until May 23, 1996. (Id. at 9). On April 1996, Reyes-García drafted a letter to Mayor O'Neill complaining he had been demoted with the appointment of Reyes-Rosado, and that this was a result of political discrimination. (Id. at 8). When he returned to work, Reyes-García assumed the position of Director of Municipal Revenues, and worked under the supervision of Reyes-Rosado. (Id. at 9). It is uncontested that Reyes-García was not discharged, or subjected to a reduction in his compensation or benefits.

## DISCUSSION

### I. Summary Judgment Standard

In the context of summary judgment, the plaintiff must show that there is a genuine issue of material fact. See Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248 (1986). "[A] material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." See Anderson, 477 U.S. at 248. The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). To make this assessment in a given case, the Court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." See Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir.

3

1990). When carrying out that task, the Court may safely ignore "conclusory allegations, improbable inferences, and unsupported speculation." See Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F. 2d 5, 8 (1st Cir. 1990). The issue before the court is "not whether [it] thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." See Anderson, 477 U.S. at 252. See also Lipsett, 864 F.2d at 895 (1st Cir. 1988).

## II. Statute of Limitations

Defendants contend they are entitled to summary judgment because Reyes-García's claim is time-barred by the applicable statute of limitations. They argue that the undisputed facts occurring within the limitations period do not support a continuing violation of Reyes-García First Amendment rights. (Docket 46, Motion for Summary Judgment at 18), After viewing the record in the light most favorable to the plaintiff, we agree.

The limitations period for § 1983 is governed by the applicable state statute of limitations for personal injury actions. See Wilson v. Garcia, 471 U.S. 261, 278-280 (1985). In Puerto Rico, the statute of limitations is one year. See Article 1868(2) of the Civil Code, P.R. Laws Ann. tit. 31, § 5298(2); Torres v. Superintendent of Police, 893 F.2d 404, 406 (1st Cir. 1990). Although this Court will apply the one-year period applicable for local tort actions, the date of accrual is a federal law question. See Rivera-Muriente v. Agosto-Alicea, 959

4

F.2d 349, 363 (1st Cir. 1992). The accrual period "ordinarily starts when the plaintiff knows, or has reason to know of the injury on which the action is based." See Rivera-Muriente, 959 F.2d at 363 (1st Cir. 1992); Carreras-Rosa v. Alves-Cruz, 127 F.3d 172, 174 (1st Cir. 1997); Velazquez-Rivera v. Danzig, 234 F.3d 790, 795 (1st Cir. 2000). If plaintiff establishes a continuing violation of his first amendment rights the statute of limitations begins to accrue after violation concluded. See Muniz-Cabrero v. Ruiz, 23 F.3d 607, 610 (1st Cir. 1994)(quoting Velazquez v. Chardon, 736 F.2d 831, 833 (1st Cir. 1984). To establish a continuing violation, Reyes-García "must allege that a discriminatory act occurred or that a discriminatory policy existed within the period prescribed by the statute." Id.

There are two kinds of continuing violations, serial violations and systematic violations. Serial violations consist of a series of discriminatory acts emanating from the same discriminatory animus, each act constituting a separate actionable wrong. See Jensen v. Frank, 912 F.2d 517, 522 (1st Cir. 1990). Plaintiff must show that at least one discriminatory act occurred within the limitations period to establish a serial violation. See Muniz-Cabrero, 23 F.3d at 610. To establish a systematic violation, plaintiff must show that he was harmed by a discriminatory policy or practice, and that such policy or practice continues into the limitations period. Id. Plaintiff is not required to show any particular discriminatory act within the

5

limitations period under a systematic violation theory. <u>Jensen</u>, 912 F.2d at 523.

Thus, for purposes of summary judgment, Reyes-García must point to evidence showing that a series of discriminatory acts continued into the one-year limitations period, or he must demonstrate the existence of a discriminatory policy within the limitations period.

### III. Reyes-García First Amendment Claims

The Court must employ the burden-shifting-framework enunciated in <u>Mt. Healthy City School District Board of Education v. Doyle</u>, 429 U.S. 274, 287 (1977), to decide Reyes-García's free speech and political discrimination claims. See <u>Padilla-Garcia v. Guillermo Rodriguez</u>, 212 F.3d 69, 74(1st Cir. 2000); <u>Rodriguez-Rios v. Cordero</u>, 138 F.3d 22, 24 (1st Cir. 1998); <u>Acevedo-Diaz v. Aponte</u>, 1 F.3d 62, 67 (1st Cir. 1993); see also <u>Elrod v. Burns</u>, 427 U.S. 347, 354 (1976); <u>Branti v. Finkel</u>, 445 U.S. 507, 517-519 (1980); <u>Rutan v. Republican Party of Illinois</u>, 497 U.S. 62, 75 (1990). Under <u>Mt. Healthy</u>, Reyes-García bears the initial burden of establishing a prima facie case of § 1983. See <u>Padilla-Garcia</u> 22 F.3d at 74. In general, Reyes-García must first establish a prima facie case by showing that he engaged in constitutionally protected conduct, and that this conduct was a substantial or motivating factor for the adverse employment decision. <u>Id</u>. With respect to Reyes-García claims, the <u>Mt. Healthy</u> prima facie model requires him to show that: 1) his affiliation with Rocky Cruz was

6

political, not personal, and 2) his affiliation with Rocky Cruz was a substantial or motivating factor behind the alleged discriminatory treatment. Id. Reyes-García's prima facie case, then, depends on whether he has submitted evidence that would "permit a rational fact-finder to conclude that the challenged personnel action occurred and stemmed from a politically based discriminatory animus." Id.; see also Rivera-Cotta v. Rivera, 38 F.3d 611, 614 (1st Cir. 1994). Establishment of the prescribed prima facie case creates a presumption that defendants engaged in impermissible discrimination. Id. To rebut this presumption, defendants needs only to articulate that they would have taken the same actions regardless of the Reyes-García political beliefs. Id.

After careful review of the record, the Court finds that plaintiffs have not presented sufficient evidence to prove that Reyes-García affiliation with Rocky Cruz was a "substantial" or "motivating" factor behind the events occurring within the limitations period. The only evidence supporting plaintiffs' claim is a statement made by Mayor O'Neill to co-defendant Reyes-Rosado in 1996. Mayor O'Neill said he had lost confidence in Reyes-García because he had failed to follow political orders with regard to certain candidates, and that he wanted to change Reyes-García's position. (Docket 66, Motion in Opposition to Summary Judgment at 8). This evidence, however, would only support the

actions taken in 1996, when Reyes-García began working as Director of Municipal Revenues.

The year before Reyes-García filed the complaint, the following incidents occurred. In March, 1997, Reyes-García was suspended from his employment for an irregularity on his purchase of certain paints and materials on behalf of the municipality in 1995. Reyes-García asserts that there is an issue of fact as to his liability. Nevertheless, an administrative hearing was held and Reyes-García was given no credibility. The suspension was served after all of Reyes-García's rights to appeal were exhausted. Thus, Reyes-García was not prevented from working, or disciplined without due process.

The remainder of the incidents that occurred the year prior to the filing of the complaint flow from the acts that Reyes-García has notice since May, 1995. Reyes-García complained to Mayor O'Neill that he did not have any specific functions with regard to his new position. (Docket 82, Amended Statement of Uncontested Facts at 10). Mayor O'Neill agreed with Reyes-García, and ordered Guaynabo's Human Resources Director to deliver Reyes-García's job description to him. (Id. at 11). Reyes-García complained that defendants did not allow him to perform his assigned functions because these functions belong to someone else. (Id. at 11-13). Reyes-García's son was denied admission to Guaynabo's Head Start Program. (Id. at 10). Reyes-García was switched from office twice the year before the filing of the

complaint, and now works in a room with three other employees. (Id. at 11). He was also charged one hour of vacation time for leaving the office to take his son to the doctor. (Id. at 17).

Reyes-García avers that this chain of events establish that there was a continuing violation based on his political relationship with Rocky Cruz. The Court disagrees. "A continuing violation is not stated if all that appears from the complaint is that the plaintiff continues to suffer from the ongoing effects of some past act of discrimination." See Goldman v. Sears, Roebuck & Co., 607 F.2d 1014, 1018 (1st Cir. 1979). Reyes-García must do more than demonstrate "that not only the injury, but the discrimination, is in fact ongoing." Velazquez v. Chardon, 736 F.2d 831, 833 (1st Cir. 1984). Thus, Reyes-García may not complain about his job functions within the limitations period if they are a result of his earlier demotion.

Furthermore, Reyes-García fails to submit other evidence that shows that the actions occurring within the limitations period stemmed from a discriminatory animus. Reyes-García submits allegations that he was treated unfairly within the limitations period, but does not point to evidence demonstrating that the defendants "singled him out" in retaliation for his political affiliation. See Vazquez v. Lopez-Rosario, 134 F.3d 28, 36 (1st Cir. 1998); Padilla-Garcia 212 F.3d at 75. Reyes-García's unsupported and speculative assertions are not enough to demonstrate that the undisputed facts occurring within the

9

limitations period were motivated by a discriminatory animus. <u>See</u> <u>La Rou v. Ridlon</u>, 98 F.3d 659, 661 (1st Cir. 1996). Accordingly, Reyes-García's evidence is not enough to prove a continuing violation of his First Amendment rights, given that he fails to establish that a discriminatory act occurred within the limitations period, and that a discriminatory policy or practice existed. Reyes-García's § 1983 claim is time-barred.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** defendants' motion for summary judgment. Judgment will be entered dismissing the Complaint with prejudice.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 30th day of November 2001.

_____
JAY A. GARCIA-GREGORY
United States District Judge